**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------ x
                               :
JOHN ROY,                      :
                               :   Civil No. 3:19-cv-01154(AWT)
         Petitioner,           :
                               :
v.                             :
                               :
UNITED STATES OF AMERICA,      :
                               :
         Respondent.           :
                               :
------------------------------ x
```

**RULING ON MOTION PURSUANT TO 28 U.S.C. § 2255**

Petitioner John Roy has filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. The petitioner filed the motion pro se but the court subsequently appointed counsel for him. The petitioner claims that when he was resentenced in 2017 the sentence was procedurally incorrect because it was based on an erroneous finding that his conviction for Arson in the Second Degree was a "crime of violence," and that his counsel provided him constitutionally ineffective assistance by failing to raise this issue at the time he was resentenced. For the reasons set forth below, the petitioner's motion is being denied.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On September 24, 2008, a jury found Roy guilty of possession of firearms and ammunition by a felon, in violation

of 18 U.S.C. § 922(g)(1), and manufacturing or possessing with intent to distribute 100 or more marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

On April 14, 2010, at his first sentencing hearing, the court determined that Roy was subject to the enhanced penalties of the Armed Career Criminal Act (the "ACCA") and sentenced him to a total term of imprisonment of 300 months. After an appeal and remand for resentencing with a full Faretta inquiry, on July 25, 2012, the court again determined that Roy was subject to the ACCA's enhanced penalties and again sentenced him to 300 months of imprisonment. That sentence was affirmed on appeal.

Subsequently, the United States Supreme Court held in Johnson v. United States, 576 U.S. 591, 597 (2015), that the "residual clause" of 18 U.S.C. § 924(e) was void for vagueness and found in Mathis v. United States, 579 U.S. 500, 509 (2016), that an Iowa burglary statute was broader than generic burglary as enumerated in 18 U.S.C. § 924(e)(2)(B)(ii) and therefore could not suffice for purposes of an enhancement under ACCA. Mathis also negated Connecticut's third-degree burglary offense as an ACCA qualifier. Consequently, when Roy filed his first § 2255 motion, the government agreed that Roy was no longer subject to the ACCA's enhanced penalties by virtue of his third-degree burglary convictions, and the court ordered a full resentencing.

The court scheduled the resentencing hearing for April 20, 2017. On that date the court noted that Roy had chosen not to be interviewed by the Probation Office in connection with his first sentencing and offered him the opportunity to confer with his counsel to decide if he wanted to be interviewed by the Probation Office in connection with the resentencing. Roy decided that he did want to be interviewed by the Probation Office, and the resentencing was continued to May 4, 2017.

At the time of the resentencing, the court adopted the Presentence Report as amended by the Second Addendum and calculated a guideline imprisonment range for Roy of 210-262 months. The guideline calculations were set forth in the Second Addendum, as follows:

> The base offense level is now 22, pursuant to USSG §2K2.1(a)(3), because (A) the offense involved a (i) semi-automatic firearm that is capable of accepting a large capacity magazine; or (ii) firearm that is described in 26 U.S.C. §5845(a); and (B) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense. (Of note, despite having convictions for both Arson 2nd Degree and Arson 3rd Degree, which continue to qualify as "violent felonies" under ACCA, for purposes of the base offense level in §2K2.1, those predicate convictions must qualify as "crimes of violence" as that term is defined within the guidelines. USSG §4B1.2(a) defines what a "crime of violence" is for guideline purposes. USSG §4B1.2(c) requires that the "two prior felony convictions" for either a "crime of violence" or a "controlled substance offense" be counted separately under §4A1.1(a), (b) or (c). In this case, because [the] sentence for both the Arson 2nd Degree and Arson 3rd Degree convictions occurred

on the same date, and there was no intervening arrest, they do not score separately. Therefore, as only 1 scores criminal history points, Mr. Roy has only 1 prior "crime of violence" conviction.) An additional 4 levels are added under USSG §2K2.1(b)(1)(B) because between 8 and 24 firearms were involved in the offense. Four levels are then added under USSG §2K2.1(b)(6)(B) because the defendant used or possess[ed] any firearm or ammunition in connection with another felony offense, namely, the marijuana offense. Two levels are added under USSG §3C1.1 for Obstruction of Justice, given that Mr. Roy perjured himself at trial. This results in a total offense level of 32. Given that Mr. Roy remains in criminal history category VI, this results in an advisory guideline imprisonment range of 210 to 262 months.

U.S. v. Roy, 3:07-cr-00145 (AWT) Second Addendum to the

Presentence Report (ECF No. 169) at 2-3.

At the May 4, 2017 resentencing hearing, Roy's counsel did not object to the Probation Office's use of his prior conviction for Arson in the Second-Degree to determine that the base offense level is 22.

At the time he was resentenced in 2017 Roy had served approximately 10 years of imprisonment and had approximately 3.2 years of good time credit, and his counsel advocated for a sentence of time served. Roy's counsel emphasized that he had received only one disciplinary ticket, which was for insolence, that he had completed a number of educational/electronics courses and obtained a certification, and that he had held a responsible position in the electronics shop while in prison. The government recommended a sentence of 262 months of

imprisonment, emphasizing Roy's criminal past. It maintained that Roy's efforts in terms of post-conviction rehabilitation failed to address those areas where he actually needed rehabilitation.

The court sentenced Roy to 120 months of imprisonment on Count One (felon in possession) and 240 months of imprisonment on Count Two (manufacture or possession of 100 or more marijuana plants), to be served concurrently and with credit for time served. At the May 4, 2017 hearing, the court accepted the factual determinations and credibility judgments made by Judge Burns' at the 2010 sentencing, particularly her concern about Roy's lengthy criminal record and the fact that Roy had not been deterred by a previously-imposed lengthy sentence. This sentence was affirmed on appeal.

## II.  LEGAL STANDARD

Federal prisoners can challenge a criminal sentence pursuant to 28 U.S.C. § 2255 "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal citation and quotation marks omitted).  A petitioner may obtain review of his claims if he has raised them at trial or on direct appeal; if he did not, such a procedural default can be overcome by a showing

of "cause" and "prejudice", Ciak v. United States, 59 F.3d 296, 302 (2d Cir. 1995) abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162 (2002) (quoting Wainwright v. Sykes, 433 U.S. 72, 87 (1977)), or a showing of constitutionally ineffective assistance of counsel, see Johnson v. United States, 313 F.3d 815, 817 (2d Cir. 2002); Murray v. Carrier, 477 U.S. 478, 487-88 (1986).

Section 2255 provides that a district court should grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, "[t]he language of the statute does not strip the district courts of all discretion to exercise their common sense." Machibroda v. United States, 368 U.S. 487, 495 (1962). In making its determination regarding the necessity for a hearing, a district court may draw upon its personal knowledge and recollection of the case. See Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1997); United States v. Aiello, 900 F.2d 528, 534 (2d Cir. 1990). Thus, a § 2255 petition, or any part of it, may be dismissed without a hearing if, after a review of the record, the court determines that the motion is without merit because the allegations are insufficient as a matter of law.

## III. DISCUSSION

The petitioner claims that his arson conviction was erroneously found to be a "crime of violence," and this error resulted in an incorrect calculation of his guideline range. The petitioner also claims that his counsel was constitutionally ineffective by not raising this issue at the time he was resentenced and therefore preserving the issue for appeal. The court concludes that Roy's conviction for Arson in the Second Degree does qualify as a "crime of violence" and his guideline range was accurately calculated. The court concludes further that even assuming <u>arguendo</u> that his guideline range was inaccurately calculated, Roy did not receive ineffective assistance of counsel.

### A. Second-Degree Arson Under Conn. Gen. Stat. § 53a-112(a)(1)(B) is a "Crime of Violence"

At the resentencing in 2017, the court adopted the conclusion in the Presentence Report that Roy's base offense level should be 22 under U.S.S.G. § 2K2.1(a)(3) because his prior Connecticut conviction for Arson in the Second-Degree qualifies as a "crime of violence" under the Guidelines.

The Guidelines define a "crime of violence" as follows:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

> (1) has as an element the use, attempted use, or
> threatened use of physical force against the
> person of another, or
>
> (2) is murder, voluntary manslaughter,
> kidnapping, aggravated assault, a forcible sex
> offense, robbery, **arson**, extortion, or the use or
> unlawful possession of a firearm described in 26
> U.S.C. § 5845(a) or explosive material as defined
> in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2 (emphasis added). Thus "arson" is expressly

enumerated in U.S.S.G. § 4B1.2.

> Where the Guidelines enumerate an offense as a "crime
> of violence," we undertake what is known as the
> "categorical approach." We "look only to the statutory
> definitions—i.e., the elements—of a defendant's prior
> offenses, and **not** to the particular facts underlying
> those convictions." We then compare the elements of
> the statutory offense to "the generic, contemporary"
> definition of the offense. A prior conviction will
> constitute a "crime of violence" for a sentencing
> enhancement "only if the statute's elements are the
> same as, or narrower than, those of the generic
> offense."
>
> In some cases, however, the defendant is convicted
> under a more complicated statute that criminalizes
> multiple acts in the alternative—thereby requiring a
> sentencing court to deduce which of these elements
> "was integral to the defendant's conviction." In these
> circumstances, we apply what is known as the "modified
> categorical approach." This requires us to "look[ ] to
> a limited class of documents (for example, the
> indictment, jury instructions, or plea agreement and
> colloquy) to determine what crime, with what elements,
> a defendant was convicted of."

United States v. Pereira-Gomez, 903 F.3d 155, 161–62 (2d Cir.

2018) (emphasis and alteration in original) (footnotes omitted).

In United States v. Moore, the court explained that: "In the

event a statute criminalizes multiple acts in the alternative,

thereby defining multiple crimes, it is considered 'divisible,' and we apply the modified categorical approach. A statute is not considered divisible if, instead of defining multiple crimes, it lists various factual means of committing a single crime." 916 F.3d 231, 238 (2d Cir. 2019) (internal citation omitted).

As an initial matter, the petitioner argues that the categorical approach must be applied to § 53a-112 because it is not divisible. The court does not agree.

Conn. Gen. Stat. § 53a-112 states:

> (a) A person is guilty of arson in the second degree when, with intent to destroy or damage a building, as defined in section 53a-100, (1) he starts a fire or causes an explosion and (A) such act subjects another person to a substantial risk of bodily injury; or (B) such fire or explosion was intended to conceal some other criminal act; or (C) such fire or explosion was intended to subject another person to a deprivation of a right, privilege or immunity secured or protected by the Constitution or laws of this state or of the United States; or (2) a fire or explosion was caused by an individual hired by such person to start such fire or cause such explosion.

Thus, § 53a-112 criminalizes multiple acts in the alternative. A defendant can commit arson by himself by starting a fire or causing an explosion, or in the alternative by hiring a person to do so. Hiring another person is not an element of the offense under subsection (a)(1) of the statute. As noted by the government in its response, "Connecticut's standard jury instructions separate the two subsections, which delineate

different elements to violate the statute." Resp't's Mem. of Law in Opp'n to Pet'r's § 2255 Mot. (ECF No. 31) at 5; see also Connecticut Judicial Branch Criminal Jury Instructions § 9.3-2 Arson in the Second Degree -- § 53a-112(a)(1), and § 9.3-3 Arson in the Second Degree -- § 53a-112(a)(2), available at https://www.jud.ct.gov/JI/Criminal/Criminal.pdf (last visited March 12, 2024).

Because § 53a-112 is divisible, the court applies the modified categorical approach and looks to various documents, including the charging document, to determine what crime, with what elements, Roy was convicted of. Here the charging document shows that Roy was convicted under § 53a-112(a)(1)(B).

The elements of Conn. Gen. Stat. § 53a-112(a)(1)(B) are: (1) "the defendant started or caused a fire or explosion," (2) "the defendant specifically intended to destroy or damage a building," and (3) "the defendant's intention was to conceal some other criminal act." Connecticut Judicial Branch Criminal Jury Instructions § 9.3-2 Arson in the Second Degree -- § 53a-112(a)(1).

> Ordinarily, "building" implies a structure that may be entered and used by people, as a residence or for business, or for other purposes involving occupancy by people, whether or not it is actually entered and used as such . . . . The law has expanded this definition to include, in addition to what we ordinarily know as a building, any watercraft, aircraft, trailer, sleeping car, railroad car, other structure or vehicle or any building with a valid certificate of occupancy.

Id.

The prior conviction under § 53a-112(a)(1)(B) will constitute a "crime of violence" for purposes of a sentencing enhancement only if the elements of that offense are "the same as, or narrower than, those of the generic offense" of arson. Pereira-Gomez, 903 F.3d at 161. "The generic definition of an offense is the 'contemporary understanding of the term,' as ascertained from the criminal codes of the states, federal criminal statutes, the Model Penal Code, scholarly treatises, legal dictionaries, and, when appropriate, the common law." Moore, 916 F.3d at 237 (quoting United States v. Castillo, 896 F.3d 141, 150 (2d Cir. 2018)).

In United States v. Hathaway, which involved third degree arson as defined in a Vermont statute, the court stated that if the statute of conviction "substantially corresponds to a modern generic definition of arson, then [the] conviction may be counted as 'arson' for purposes of the federal sentencing statute." 949 F.2d 609, 610 (2d Cir. 1991). The court observed that "the proper inquiry in this case is solely a comparison of the elements of arson in Vermont to that crime's generic elements." Id. The court concluded that "[t]he essential element of third degree arson in Vermont is a wilful and malicious burning of personal property. See Vt. Stat. Ann. tit. 13, § 504.

-11-

Appellant does not and could not argue that this is an unusual definition of arson." Id. In response to the appellant's argument that "the Vermont statute does not comport with the generic contemporary meaning of arson because it also prohibits secondary acts such as counseling, aiding or procuring the burning, and sets a low threshold of property damage," the court stated that "[e]ven assuming the need to look beyond the single element of a malicious burning in defining generic arson--and we are not certain that such an inquiry is necessary--we do not agree with appellant's contentions." Id.

Conn. Gen. Stat. § 53a-112(a)(1)(B), similar to the Vermont statute at issue in Hathaway, requires a malicious burning, namely, specific intent to destroy or damage property with the intention to conceal some other crime. See also United States v. Misleveck, 735 F.3d 983, 988 (7th Cir. 2013) ("Our interpretation of generic arson as embracing the intentional or malicious burning of any property, regardless of value or amount of damage, coincides with the interpretation that has been adopted by the Fifth, Eighth, and Ninth Circuits, United States v. Velez-Alderete [569 F.3d 541, 546 (5th Cir. 2009)]; United States v. Whaley, 552 F.3d 904, 906 (8th Cir. 2009); United States v. Velasquez-Reyes, 427 F.3d 1227, 1230 (9th Cir. 2005)— all cited approvingly, by the way, in Brown v. Caraway, [719 F.3d 583, 590 (7th Cir. 2013)]. We've found, and the parties

have cited, no contrary authority."); Velez-Alderete, 569 F.3d at 546 ("We join our sister Courts of Appeals in holding that the generic, contemporary definition of arson involves a willful and malicious burning of property."); United States v. Gatson, 776 F.3d 405, 410 (6th Cir. 2015) (". . . like every other court to consider the question, we conclude that generic arson embraces the intentional or malicious burning of any property.").

In addition, the petitioner argues that even if Conn. Gen. Stat. § 53a-112(a)(1)(B) is divisible, he was not previously convicted of a "crime of violence" because, even under the modified categorical approach, aiding and abetting second-degree arson under § 53a-112(a)(1)(B) is not a "crime of violence" for three reasons. First, he contends that the property that is burned must be property "of another." Second, he contends that generic arson does not apply to property other than a "building." Third, he contends that because he was convicted of aiding and abetting second-degree arson, he was not convicted of committing the crime of arson itself as a principal. None of these contentions are persuasive.

With respect to the first contention, the petitioner relies principally on the Model Penal Code in arguing that generic burglary is limited to burning or destroying property "of

another" and that Connecticut's second-degree arson statute is not so limited. He asserts that

> In <u>Begay v. United States</u>, the Supreme Court noted that the generic crime of arson means "causing a fire or explosion with 'the purpose of,' <u>e.g.</u>, 'destroying a building . . . **of another**' or 'damaging **any property . . . to collect insurance**.'" 553 U.S. 137, 145 (2008) (quoting Model Penal Code § 220.1(1) (1985)) (emphasis added, ellipses in original).

Pet'r John Joy's Suppl. Mem. in Supp. of Mot. Purduant to 28 U.S.C. § 2255 to Correct Sentence (ECF No. 28) at 11. But <u>Moore</u> makes it clear that the Model Penal Code is only one source to consider in assessing whether a statute constitutes a "generic" offense. <u>See</u> <u>Moore</u>, 916 F.3d at 237 ("generic definition is the 'contemporary understanding of the term,' as ascertained from the criminal codes of the states, federal criminal statutes, the Model Penal Code, scholarly treatises, legal dictionaries, and, when appropriate, the common law." (quoting <u>Castillo</u>, 896 F.3d at 150)). <u>Hathaway</u> and the above cited cases from the Fifth, Eighth and Ninth Circuits make it clear that generic arson is not limited to burning or destroying the property of another. Moreover, the language from <u>Begay</u> relied on by the petitioner does not support his argument. In <u>Begay</u>, "destroying a building . . . of another" was merely given as an example of a purpose with which one could commit arson. 553 U.S. at 145 (quoting ALI Model Penal Code § 220.1(1) (1985)).

With respect to the second contention, the petitioner argues that "under the definition of generic arson used in Begay, a generic offense involves willful and malicious burning of 'a building.'" Pet'r John Joy's Suppl. Mem. in Supp. of Mot. Purduant to 28 U.S.C. § 2255 to Correct Sentence at 13. The argument that generic arson is limited to buildings was squarely rejected in United States v. Velasquez-Reyes, where the defendant argued that "the Washington statute does not come within the generic definition of arson because it criminalizes setting fire to personal property, such as timber, crops, cars, and other forms of personal property." 427 F.3d 1227, 1230 (9th Cir. 2005). But the court stated: "We disagree. A majority of state arson statutes, and the federal arson statute, extend beyond dwellings or buildings to include various types of personal property." Id.

In addition, in Begay, where the issue was whether the felony offense of driving under the influence of alcohol was a violent felony, the Court distinguished driving under the influence from arson, extortion, and crimes involving the use of explosives, noting that the later crimes "all typically involve purposeful, violent, and aggressive conduct" and then referenced "ALI Model Penal Code § 220.1(1) (1985) ('arson' is causing a fire or explosion with 'the purpose of,' e.g., 'destroying a building . . . of another' or 'damaging any property . . . to

collect insurance') . . . ." <u>Begay</u>, 553 U.S. at 144-45 (first
and second ellipses in original) (internal quotation marks and
citations omitted). Thus, in <u>Begay</u> in referencing the Model
Penal Code and arson, the Court merely gave destroying a
building as an example of a purpose of arson, and in addition,
included damaging <u>any</u> <u>property</u> to collect insurance, which is
clearly not limited to buildings.

Moreover, in <u>Hathaway</u>, the court recognized that the
property that is burned can be personal property. The court
stated that "[t]he essential element of third degree arson in
Vermont is a wilful and malicious burning of personal property,"
citing Vt. Stat. Ann. tit. 13, § 504. <u>Hathaway</u>, 949 F.2d at 610.
That Vermont statute provides: "A person who willfully and
maliciously sets fire to or burns or causes to be burned, or who
willfully and maliciously aids, counsels, or procures the
burning of **<u>any</u>** personal property of whatsoever class or
character . . . ." Vt. Stat. Ann. tit. 13, § 504 (emphasis
added).

<u>Hathaway</u> is dispositive of the petitioner's third
contention, i.e. that because he was convicted of aiding and
abetting second-degree arson, as opposed to committing the crime
of arson as a principal, the conviction does not satisfy the
definition a "crime of violence." In <u>Hathaway</u> the court stated:

-16-

> While one could be convicted only as an accessory to
> arson on the basis of secondary acts at common law,
> the laws of many states today include counseling,
> aiding or procuring the burning within the definition
> of actual arson. <u>See</u> 6A C.J.S. Arson § 22 (1975 &
> Supp.1990); N.Y.Penal Law § 20.00 (McKinney 1987); <u>see
> also</u> <u>Taylor [v. United States</u>, 495 U.S. 575, 592-95
> (1990)] (emphasizing need to look beyond "common law
> roots" of crime to modern definitions). Aiding and
> abetting also supports a substantive conviction for
> arson under Federal law.

<u>Id.</u> at 610-11.

### B. Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim,
the petitioner must show, first, that his "counsel's
representation fell below an objective standard of
reasonableness" and, second, that "there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different." <u>Strickland
v. Washington</u>, 466 U.S. 668, 688, 694 (1984).

> To satisfy the first, or "performance," prong, the
> defendant must show that counsel's performance was
> "outside the wide range of professionally competent
> assistance," <u>id.</u> at 690, and to satisfy the second, or
> "prejudice," prong, the defendant must show that "there
> is a reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding
> would have been different," <u>id.</u> at 694.

<u>Brown v. Artuz</u>, 124 F.3d 73, 79-80 (2d Cir. 1997) (internal
parallel citations omitted). In this context, "there is no
relevant difference between an [attorney's] act of commission
and an act of omission." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 370

(2010) (internal quotation marks omitted). Rather, "[t]he court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.

"The court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (alterations in original) (quoting Strickland, 466 U.S. at 689). Courts should not second-guess the decisions made by defense counsel on tactical and strategic matters. See United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998). "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" Aguirre, 912 F.2d at 561 (alteration in original) (internal citations omitted) (quoting Strickland, 466 U.S. at 696-97).

To satisfy the prejudice element of the Strickland test, a petitioner "must make more than a bare allegation" of prejudice. United States v. Horne, 987 F.2d 833, 836 (D.C. Cir. 1993). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That requires a substantial, not just conceivable, likelihood of a different result." Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (internal quotation marks omitted).

Here the petitioner fails to satisfy the first, i.e. "performance," prong, so the court need not address the second, i.e. "prejudice," prong.

Roy's current counsel consulted with his prior counsel and was informed "that [prior] counsel agreed with the Probation Office that the Arson in the Second Degree conviction qualified as a 'crime of violence.'" Pet'r John Joy's Suppl. Mem. in Supp. of Mot. Purduant to 28 U.S.C. § 2255 to Correct Sentence at 3. In the context of the relevant caselaw at the time of the 2017 resentencing, it was not outside of the wide range of professionally competent assistance for prior counsel to reach this conclusion. Hathaway did not limit generic arson to a building or to property of another. See 949 F.2d at 610. In addition, it rejected an argument by the appellant there that the Vermont statute did not comport with the "generic" meaning of arson because it prohibited secondary acts such as

-19-

counseling, aiding, or precuring the arson. <u>See</u> <u>id.</u> at 610-11.
Moreover, as discussed above, other circuits had concluded prior
to 2017 that the essential elements of generic arson are "a
willful and malicious burning of property," <u>Velez-Alderete</u>, 569
F.3d at 546, and <u>Hathaway</u> had been cited with approval in, <u>inter
alia</u>, <u>Velez-Alderete</u>, <u>id.</u>, <u>Velasquez-Reyes</u>, 427 F.3d at 1230,
<u>Whaley</u>, 552 F.3d at 906, <u>United States v. Knight</u>, 606 F.3d 171,
174 (4th Cir. 2010), and <u>United States v. Miller</u>, 246 F. App'x
369, 372 (6th Cir. 2007). Notably, the case law related to
generic arson in this circuit or any other circuit has not moved
in the direction advocated by the petitioner.

It was a reasonable strategy for the petitioner's counsel
to choose not to advance an argument that ran counter to
precedent and might have prejudiced his credibility with respect
to the arguments for a lower sentence he made based on the
amount of time the petitioner had already served, the
petitioner's disciplinary record, and the courses the petitioner
had completed and position he held in prison. Thus, the court
agrees with the government's characterization that "his counsel
in 2017 might well have considered it prejudicial to the
credibility of his advocacy before this Court to argue that
setting multiple cars on fire with intent to conceal other
crimes did not suffice for generic arson." Resp't's Mem. of Law
in Opp'n to Pet'r's § 2255 Mot. at 15.

**IV. CONCLUSION**

For the reasons set forth above, the Motion Pursuant to Correct Sentence Under 28 U.S.C. 2255 (ECF No. 1) is hereby DENIED.

The court will not issue a certificate of appealability because the petitioner has not made a substantial showing of the denial of a constitutional right.  See 28 U.S.C. § 2253(c)(2).

The Clerk shall close this case.

It is so ordered.

Dated this 14th day of March 2024, at Hartford, Connecticut.


_____
                /s/
          Alvin W. Thompson
    United States District Judge